IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEENA MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | TRIAL BY JURY REQUESTED |
| Officer DANIEL DONALDSON, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Officer THURMAN LEWIS, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF LANSING, Kansas, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Deena McLaughlin, by and through counsel Tai J. Vokins and

Danielle N. Davey of the law firm of Downing, Davey, Vokins & Mann, LLC, and Katie Barnett

of Barnett Law Office, LLC, for her Complaint for Damages against the above-named Defendants,

and alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§

1331, 1367; 28 U.S.C. § 1343(a)(3); and venue is properly set in the United States District Court

for the District of Kansas pursuant to 28 U.S.C. § 1391.

2.  The causes of action arise from factual allegations occurring in this judicial district.

3.  Each of the named Defendants is situated in this judicial district.

4. At all times relevant, Plaintiff Deena McLauglin ("Ms. McLaughlin" or "Plaintiff") resided in the City of Lansing, Leavenworth County, State of Kansas.

5. Plaintiff was the co-owner and/or owner of the now-deceased male Terrier mix named Axel, her personal property, companion animal, and immediate family member.

6. The City of Lansing ("City") is a municipal corporation, organized under the laws of the State of Kansas, including for purposes of liability under 42 U.S.C. § 1983. It operates the City of Lansing Police Department ("LPD"), the entity for which Defendants Donaldson and Lewis worked during the complained-of incident.

7. Plaintiff names the City of Lansing directly and also asserts official-capacity claims against the individual officers as necessary and to bind the City as the real party in interest. Plaintiff does not seek double recovery and, to the extent the Court determines any capacity pleading is duplicative or unnecessary, Plaintiff will proceed in the non-duplicative configuration (City and/or individual capacity) without prejudice to the merits.

8. Defendant Daniel Donaldson ("Donaldson") is, and at all times relevant was, a resident of Leavenworth County, Kansas, and an employee and/or agent of LPD and the City, acting within the scope of his employment for purposes of state law and under color of state law for purposes of federal law. He is sued in both his individual and official capacities; however, to the extent any official-capacity claim is deemed duplicative of the claim against the City of Lansing, Plaintiff pleads in the alternative and will proceed in the non-duplicative capacity as the Court directs, without waiver of any theory of municipal liability.

9. Defendant Thurman Lewis ("Lewis") is, and at all times relevant was, a resident of Leavenworth County, Kansas, and an employee and/or agent of LPD and the City, acting within the scope of his employment for purposes of state law and under color of state law for purposes of

federal law. He is sued in both his individual and official capacities; however, to the extent any official-capacity claim is deemed duplicative of the claim against the City of Lansing, Plaintiff pleads in the alternative and will proceed in the non-duplicative capacity as the Court directs, without waiver of any theory of municipal liability.

10. Plaintiff's claim for attorney's fees and costs is authorized by, inter alia, 42 U.S.C. § 1988. No administrative claim filing or other pre-litigation requirements apply to the claims against Defendants under 42 U.S.C. § 1983.

11. On August 30, 2024, the City was mailed via certified letter a Notice of Claim on behalf of Ms. McLaughlin in full compliance with claim-notice laws, including but not limited to K.S.A. 12-105b. More than one hundred twenty (120) days have elapsed since the Plaintiff sent the notice of claim to the City.

12. This action was previously filed in this Court as Case No. 25-2361-JWB-BGS and was voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a). Former co-plaintiff Michael Lewis is not a party to this refiled action. All claims are timely under the applicable statutes of limitations.

13. This Court has personal jurisdiction over the Defendants.

**GENERAL ALLEGATIONS**

13. At all times relevant Ms. McLaughlin co-owned and/or owned Axel, a medium brown mixed-breed Terrier dog.

14. On or about May 10, 2024, Defendants Donaldson and Lewis were employed as law enforcement officers by Defendant City of Lansing and on-duty and acting within the scope of their employment with Defendant City of Lansing.

15. Plaintiff brings this case against Defendants Donaldson and Lewis, in their individual and official capacities as empowered police officers of the City of Lansing, Kansas, and as state officials, for the unlawful seizure by killing and destruction of Axel, her personal property, beloved dog and companion animal without due process of law, in violation of her protected Fourth and Fourteenth Amendment rights, pursuant to and as authorized under 42 U.S.C. § 1983, and against Defendant City of Lansing, Kansas, a municipal corporation and body politic, for its failures to properly and adequately train and supervise Defendants Donaldson and Lewis as empowered police officers and agents in its employ, pursuant to and under theories of municipal liability ("*Monell*" liability).

16. Pursuant to the United States Supreme Court's opinion in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is subject to liability under § 1983 when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. Further, the decision not to take any action to relieve constitutional violations constitutes a "policy" for purposes of § 1983 municipal liability.

17. As pleaded and set forth in detail below, on or about May 10, 2024, at 11:55 a.m., Defendant Daniel Donaldson responded to a call from Lansing Police Department dispatch reporting an at-large dog chasing cars and barking. The initial report did not indicate the dog was exhibiting aggression or combativeness toward a person or another animal, domestic or livestock, and had not harmed any person or property.

18. Defendants Donaldson and Lewis initially sought assistance in locating Axel's owner and keeping Axel safe until the owner was located.

19. After visiting several residences to inquire about the dog, Defendant Donaldson observed a medium-sized, mixed-breed dog barking at cars in a Lansing neighborhood at 12:14 p.m. Defendant Donaldson parked in a resident's driveway and attempted once to catch the dog, later identified as Axel, by retrieving his catch pole (*e.g.,* the City-issued 'snare pole') from his vehicle, but ultimately gave up.

20. With multiple neighbors watching, Defendant Donaldson approached Axel with his catch pole, stood watching him, whistled to him a few times, and gave up on capturing him after 93 seconds. Defendant Donaldson then returned to his vehicle, put away the catch pole, told onlooking neighbors he "didn't want to shoot a dog" and he was "glad I didn't shoot it right then and there, that would've been weird."

21. With nothing else to do, Defendant Donaldson returned to the LPD station to speak with the records clerk, seeking information about the dog's owners. After talking with the Reporting Party (Seth Persinger) and checking public records, Defendants Donaldson and Lewis determined the dog's owner (e.g., the Plaintiff in this case) resided at 705 E. Beth Street, Lansing, Kansas 66043.

22. When Defendants Donaldson and Lewis arrived at the McLaughlin residence at approximately 1:20 p.m., Axel was standing in the driveway next to the house by the side door.

23. Defendant Donaldson's report of the incident states the purpose of his visit was to "inform the dog's owners to retrieve their dog" but when he arrived, Defendant Lewis saw the dog on his owner's property, and got out of his vehicle holding his baton showing Lewis knew and was prepared to use a nonlethal method of defense, capture, or restraint.

24. At 1:20 p.m., both officers stepped onto Plaintiff's property and immediately walked directly toward Axel, who was still standing in his owner's driveway. Axel began barking as they approached, as most dogs of any breed or size, from Pomeranian to Great Dane, tend to do.

25. Plaintiff came out of the house holding a short leash/tether when she heard Axel barking at the officers. She immediately told the officers that Axel must have gotten off his tether from the property. At this point, the officers had knowledge that Axel was in his own yard, and Plaintiff was able to restrain him.

26. Axel was stationary in his yard for approximately 15 seconds as the officers continued to walk towards Axel.

27. After approximately 15 seconds, Axel walked towards Officer Lewis, wagging his tail and barking. Ms. McLaughlin called Axel by name to come back, closely following him with a leash in her hands as he approached Officer Lewis. Officer Lewis calmly stood still and held out his baton, pointed at Axel and Axel stopped several feet away from Donaldson.

28. Defendant Donaldson was walking towards Axel on Lewis's right side, and Axel then walked a few steps in Defendant Donalson's general direction but did not walk directly towards him.

29. Approximately three to five seconds later, Axel walked a few steps parallel to the house and to Lewis's right, and as Axel moved out of the way, Donaldson drew his firearm and aimed it at Axel.

30. Officer Donaldson did not retreat or ask Ms. McLaughlin to get Axel, who was standing a few feet away, holding a leash, and was ready, willing and able to restrain Axel.

31. As Donaldson pointed his gun at Axel, Defendant Lewis shouted to Defendant Donaldson, "don't do it, don't do it … no, no, don't" but Defendant Donaldson fired two shots into Axel's

hindquarters, within mere feet of Ms. McLaughlin's position. Immediately after the shots, Defendant Lewis said "oh, shit, yep" to himself.

32. Axel screamed in pain and agony for 35 seconds and appeared to have a lower spinal injury, which was evident because he was screaming and moving only by dragging his legs behind him. Ms. McLaughlin witnessed the event, and at some point, backed away with her hands to her face after Defendant Donaldson shot Axel, saying "Oh my God" repeatedly. Defendant Lewis told Defendant Donaldson "finish him, finish him, finish him."

33. A wounded but alert Axel started using his front legs to try to crawl away from Defendant Donaldson and toward Ms. McLaughlin to safety, still screaming in fear and pain.

34. At that time, Ms. McLaughlin walked toward Axel and said "Axel, Axel, come here." From her words and actions, it is obvious that Ms. McLaughlin was willing and able to take Axel in her arms and get him medical attention for the gunshot wounds.

35. Instead of letting the owner take her injured dog and obtain medical treatment, both Defendant Donaldson and Lewis aggressively gestured for Ms. McLaughlin to get away from the dog, assertively yelled "get back, back up." But Ms. McLaughlin asked, "I can't take him?" Instead of respecting her request, Defendant Lewis immediately yelled "No, we need to finish it!"

36. Defendant Donaldson then walked up to the terrified, screaming, injured dog and shot him point blank in the head while Axel looked up at him.

37. Defendants Donaldson and Lewis's warrantless seizure of Axel was unnecessary, callous, and egregious as it was unwarranted by law and violative of Plaintiff's most fundamental and guaranteed constitutional rights. At no time during the encounter between Axel and Defendant Donaldson did Axel show any aggression towards Defendant Donaldson, only avoidance. Axel was on his owner's property and barked, displaying only normal dog behavior, but Defendant

Donaldson kept advancing and drew his service weapon, even when the owner exited the home to talk to the police and take control of her dog: an opportunity Defendants Donaldson and Lewis denied her.

38. Defendants Donaldson and Lewis had no reasonable fear that Axel presented any threat to them or anyone else. Indeed, the smaller Axel could not have posed any threat of great bodily harm to the much larger and stronger Defendants Donaldson and Lewis even if he had been so inclined.

39. In *Viilo v. Eyre*, 547 F.3d 707 (C.A.7 (Wis.), 2008) the 7th U.S. Circuit Court of Appeals concluded that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger, and the use of force is unavoidable (emphasis added)." Defendant Donaldson initially told Plaintiff that his reasoning for shooting Axel in his owner's front yard was because he believed Axel was charging at him. However, Defendants Donaldson and Lewis had spent nearly one hour searching for Axel's owner and had safely encountered Axel earlier in the day. During that first encounter, at 12:14 p.m., Defendant Donaldson failed at making a good faith attempt at using a catch pole or any other non-lethal means of apprehension and simply gave up after less than two minutes. Also, during the Defendant Officers' search for Axel, Axel was never alleged to have attacked or charged at any living thing.

40. Defendants Donaldson and Lewis lacked any lawful justification for the seizure and killing of Axel. On Plaintiff's property, Donaldson twice used deadly force even though Axel posed no immediate threat to anyone and readily available, less-intrusive alternatives existed — including allowing Ms. McLaughlin to restrain Axel, stepping back/retreating, or using non-lethal tools (e.g., baton, catch pole).

41. In fact, earlier that day, Donaldson abandoned use of his City-issued catch pole after less than two minutes. Lewis, who had a baton drawn, urged Donaldson to "finish him" and failed to

intervene despite a realistic opportunity to prevent the final shot. Their actions directly caused the destruction of Plaintiff's property.

42. Defendant Donaldson discharged his firearm within mere feet of Ms. McLaughlin, placing her in immediate danger of death or serious bodily injury. At the time Donaldson fired, he knew or should have known that Ms. McLaughlin was in close proximity, as she had exited her home, was calling Axel by name, and was closely following the dog toward the officers.

43. As further pleaded and set forth in detail below, Defendant City of Lansing bears municipal liability for its part and actions in Defendants Donaldson and Lewis's unlawful seizure and killing of Axel. Defendant City of Lansing's training and supervision of Defendants Donaldson and Lewis was so woefully inadequate that Defendants Donaldson and Lewis, both allegedly trained and capable law enforcement officers entrusted with firearms and public safety, could not even use a common and simple animal control device, namely their City-issued catch pole, to catch a lost dog.

44. Moreover, the City engaged in no or almost no training, supervision, or discipline of its officers as it relates to dog-related encounters.

45. Defendant Donaldson made statements to others, including Axel's co-owner Michael Lewis, indicating that the City had ordinances and procedures for the safe impoundment of lost or stray animals but neither trained its officers on these procedures nor put in place any mechanism for implementing them. Ultimately, Axel's death and Defendants Donaldson and Lewis's egregious violation of Plaintiff's Fourth and Fourteenth Amendment rights were the direct result of Defendant City of Lansing's failures to properly train, supervise, and discipline its officers and failures to maintain proper mechanisms for completing the most basic and common of municipal tasks of catching and impounding lost and stray dogs.

46. Defendant Donaldson's killing of Axel was effectuated without a warrant or judicial authorization.

47. There was no urgency, emergency, or exigency necessitating Axel's destruction as Axel was neither aggressive nor posing any threat to Defendant Donaldson or anyone else. The officers had safely encountered Axel earlier in the day, therefore no "split-second decision" was required as in *Carroll v. County of Monroe*, 712 F.3d 649 (2nd Cir. 2013). Plaintiff, one of Axel's owners, was present, holding a leash, and was willing, and able to control or contain him if given the opportunity.

48. Pursuant to the City of Lansing Code of Ordinances § 2-102: "Officer shall mean City Animal Control Officer or City Police Officer."

49. Pursuant to the City of Lansing Code of Ordinances § 2-308, "Officers" are to address, and resolve lost or stray dogs as follows: "A dog, cat or other animal found running at large or in violation of the articles within this chapter, situated within the corporate limits of the City, may be taken up by the officer or brought in by a member of the public and may be impounded at any facility with which the City has contracted for animal sheltering services. The officer shall make a record of all dogs or cats so impounded with their description, date of impoundment and rabies vaccination number if available. If, within four (4) business days from the date any dog or cat is impounded and the owner of such dog or cat shall appear and claim his or her dog or cat, said dog or cat may be released upon payment of the applicable impoundment fees as set forth in the contract then in effect between the City and the facility providing the sheltering services."

50. The use-of-force continuum in animal control circumstances is prescribed in the City of Lansing Code of Ordinances § 2-311 as follows: "The Chief of Police or his/her designate shall be

authorized to use a tranquilizer gun or Taser in the enforcement of this chapter. He/she shall be authorized to tranquilize/stun an animal which is impractical or impossible to catch or capture."

51. According to the City Code, only when the officer or another human being is in threat of great bodily harm from the animal, or the animal has critically injured another animal, may lethal force be employed against the animal.

52. Defendant City of Lansing was clearly aware of the need for animal control and the proper resolution of issues involving lost or stray dogs, designating its law enforcement officers to fulfill that role (§ 2-102); designating a place and process for where and how to house lost and stray animals (§ 2-308); and specifying a policy and mechanism for owners to reclaim lost dogs who had been impounded by the City (§ 2-308).

53. Contrary to Defendant Donaldson's denial of the fact that Defendant City of Lansing had an animal control program, Defendant City of Lansing did have animal control; pursuant to City Code, it was Defendant Donaldson himself, as a police officer and designate of the Chief of Police, who was animal control for the City of Lansing.

54. Defendant Donaldson made statements to others, including Axel's co-owner Michael Lewis, indicating that he had not received, been given, or had "taken" any training regarding dogs, evaluating the condition of dogs, evaluating dog behavior, and/or basic animal control functions, including simply catching stray dogs.

55. Defendant Donaldson's improper use of the catch pole, incompetence using the device, clear lack of understanding of how the device operated, and inability to employ non-lethal methods of deescalating a tense situation displayed a clear and obvious lack of training regarding his job duties, local ordinances, and best and proper animal control practices.

56. Upon information and belief, based upon statements made by City officials after the shooting of Axel, the City had not previously provided any training to Defendants Donaldson or Lewis on the safe, effective, and proper performance of their animal control duties.

57. The fact that Defendant Donaldson claimed to be unaware that he was supposed to act in an animal control capacity for the City (stating to Mr. Lewis that "we don't have animal control"), evidences Defendant City of Lansing's clear lack of training of its officers and employees and utter disregard for the rights of the citizens of Lansing and their pets and animals.

58. Pursuant to Fed. R. Civ. P. 10(c) and 8(d)(2)-(3), all factual allegations set out above are incorporated by reference into each claim for relief as though fully set forth therein. Allegations apply only to the defendants and elements relevant to that claim and are pled in the alternative to the extent of any inconsistency.

**CLAIMS FOR RELIEF**

55. The City is liable to Plaintiff based on the following legal claims and doctrines, stated in the alternative under FRCP 8(d)(2), and based on direct and vicarious liability for pendent state claims (e.g., respondeat superior [imputing fault to City based on acts and omissions of Defendants Donaldson and Lewis]). All allegations above are incorporated by reference and reasserted as to the claims below.

**FIRST CLAIM (Donaldson) — 42 U.S.C. § 1983**

**Unreasonable Seizure of Property (Axel) — Individual Capacity**

56. All of the foregoing paragraphs are hereby incorporated by reference.

57. Defendant Daniel Donaldson, whose actions were taken under color of law, violated clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by him. Donaldson unlawfully and unconstitutionally

seized Plaintiff's property, the dog Axel, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

58. Donaldson seized Plaintiff's property by shooting and killing Axel.

59. The seizure occurred without a warrant or judicial authorization.

60. At no time did Axel pose an immediate threat to officers or others; non-lethal and less intrusive alternatives were available and feasible (e.g., owner command/control, retreat, baton, catch pole, disengagement).

61. The use of lethal force to destroy Axel was objectively unreasonable under the Fourth Amendment.

62. A Fourth-Amendment seizure of property occurs with "meaningful interference" in possessory interests; warrantless seizures are per se unreasonable absent a narrow exception.

63. Donaldson's conduct violated clearly established law and proximately caused Plaintiff's injuries.

64. As a direct and proximate result, Plaintiff suffered damages (including constitutional injury, emotional distress from the destruction of her property, and consequential losses).

65. Plaintiff seeks compensatory damages and punitive damages against Donaldson in his individual capacity, and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM (Lewis) — 42 U.S.C. § 1983**

**Failure to Intervene / Aiding–Ratification — Individual Capacity**

66. All of the foregoing paragraphs are hereby incorporated by reference.

67. Defendant Thurman Lewis, whose actions were taken under color of law, violated clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by him. Lewis aided, abetted, and ratified the unlawful

and unconstitutional seizure of Plaintiff's property, the dog Axel, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

68. Lewis encouraged and/or ratified the unconstitutional force by urging a "finish him" shot after Axel was incapacitated.

69. Alternatively, and/or additionally, Defendant Lewis observed or had reason to know that Defendant Donaldson was using unconstitutional force and had a realistic opportunity to prevent or stop it but failed to intervene.

70. Defendant Lewis's omissions and/or encouragement were a proximate cause of Plaintiff's injuries.

### THIRD CLAIM (Donaldson & Lewis) — 42 U.S.C. § 1983

### Warrantless Entry/Search of Curtilage — Individual Capacities

79. All of the foregoing paragraphs are incorporated by reference.

80. Defendants entered and searched the curtilage of Plaintiff's home without a warrant, consent, or exigent circumstances, exceeding any implied license to approach for a knock-and-talk.

81. Defendants' conduct violated clearly established Fourth-Amendment law and proximately caused Plaintiff's damages.

82. Plaintiff seeks compensatory damages and punitive damages against the individual Defendants to the extent allowable by law, as well as reasonable attorney's fees and costs under 42 U.S.C. § 1988.

83. As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM (City of Lansing) — 42 U.S.C. § 1983**

**Municipal Liability (Monell)**

84. All of the foregoing paragraphs are incorporated by reference.

85. This claim is for violation(s) of Federal Constitutional Guarantees as to the City, based on defective training, resulting in the unconstitutional Fourth-Amendment seizure of Plaintiff's property, the dog Axel, by Defendants Donaldson and Lewis without due process of law in violation of the Fourteenth Amendment.

86. As described herein, Defendants Daniel Donaldson and Thurman Lewis, while acting under color of state law, deprived Plaintiff of rights secured by the Constitution in the unlawful seizure of Axel by shooting and killing him without due process of law.

87. Defendant City of Lansing's training program and disciplinary policies regarding its police and animal-control operations were non-existent or inadequate, and/or failed to provide officers with the necessary knowledge and skills to carry out their duties (including animal control), and/or allowed routine violations of rights without repercussion, including failures to train on proper catch pole use and impound procedures.

88. Defendant City of Lansing knew its officers and employees would routinely respond to reports of lost or stray animals and passed ordinances concerning the same.

89. By failing to properly train, supervise, and discipline regarding these encounters, the City acted with deliberate indifference, and that failure was a moving force behind the deprivation of constitutional rights suffered by Plaintiff.

90. As a direct and proximate consequence of the acts of Defendant City of Lansing, Plaintiff has suffered and continues to suffer damages, including deprivation of constitutional rights as guaranteed under the Fourth and Fourteenth Amendments.

91. As a result of Defendant City of Lansing's unlawful actions, Plaintiff has been compelled to retain counsel and is entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff respectfully prays for judgment against Defendant City of Lansing for compensatory damages, punitive damages (if allowed by law), attorneys' fees under 42 U.S.C. § 1988, expenses, costs, and appropriate declaratory/equitable relief.

### FIFTH CLAIM (Donaldson, Lewis & City of Lansing) — 42 U.S.C. § 1983

### Procedural Due Process — Alternative

92. All of the foregoing paragraphs are incorporated by reference.

93. In the alternative to Plaintiff's Fourth-Amendment seizure theory, Defendants summarily destroyed Plaintiff's property (Axel) without any pre- or post-deprivation process, despite City impound/notice/holding procedures.

94. The City's policies/customs — including the absence of any required use-of-force reporting when officers shoot animals and failure to implement impound procedures — reflect deliberate indifference and were a moving force behind the deprivation.

WHEREFORE Plaintiff prays for compensatory damages and reasonable attorney's fees and costs under 42 U.S.C. § 1988 against Defendants.

### SIXTH CLAIM (Donaldson, Lewis & City of Lansing) — 42 U.S.C. § 1983

### Substantive Due Process — Alternative

95. All of the foregoing paragraphs are incorporated by reference.

96. In the alternative to Plaintiff's Fourth-Amendment claims, Defendants' conduct — shooting Plaintiff's non-threatening pet in front of her, preventing her from comforting her dying animal, and then executing Axel point-blank in the head while Plaintiff watched — was so brutal,

conscience-shocking, and offensive to human dignity as to violate the substantive component of the Due Process Clause of the Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

97. This was not a split-second, heat-of-the-moment decision: Defendants had been dealing with Axel for over an hour, had safely encountered him earlier in the day, and had arrived at Plaintiff's residence for the purpose of informing the owner to retrieve the dog. The decision to shoot Axel — and then to execute him rather than allow his owner to render aid — reflects deliberate conduct that shocks the conscience.

98. The City's failure to train, supervise, or discipline its officers regarding animal encounters, and its failure to implement its own impound ordinances, reflects deliberate indifference and was a moving force behind the deprivation.

WHEREFORE Plaintiff prays for compensatory damages and reasonable attorney's fees and costs under 42 U.S.C. § 1988 against Defendants.

## LEGAL STANDARDS APPLICABLE TO FOURTH AMENDMENT / QUALIFIED IMMUNITY CLAIMS

99. As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

100.      The Fourteenth Amendment's Due Process Clause states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

101.      As defined by the United States Supreme Court, a Fourth Amendment seizure of property occurs whenever there is "some meaningful interference with an individual's possessory

interests in that property." *See Soldal v. Cook Cnty*, Ill., 506 U.S. 56, 61–62 (1992) (*citing United States v. Jacobs*en, 466 U.S. 109, 113 (1984)).

102.  As repeatedly recognized and well-established by the federal courts, the seizure of a family pet and dog by injuring or killing him or her can give rise to a claim for an unlawful seizure of property in violation of the Fourth Amendment. *Love v. Grashorn,* 134 F.4th 1109 (10th Cir. 2025*),* cert. denied*,* 223 L. Ed. 2d 506 (Jan. 12, 2026).

103.  Even if Defendants had not ultimately killed Axel, their shooting seriously injured Axel and thus was a meaningful interference with Plaintiff's possessory interests. See *Jacobsen,* 466 U.S. at 113.

104.  Also well-established by the federal courts, warrantless searches and seizures are considered per se unreasonable unless they fall within one of the few and "well-defined" exceptions to the warrant requirement. See *United States v. Place*, 462 U.S. 696, 700–02 (1983); *Katz v. United States*, 389 U.S. 347, 357 (1967).

105.  On or about May 10, 2024, Plaintiff was the lawful co-owner of Axel, Plaintiff's pet and companion animal, and Plaintiff had protected Fourth and Fourteenth Amendment rights in Axel as her property and constitutional effect.

106.  On or about May 10, 2024, Defendants Daniel Donaldson and Thurman Lewis, while acting under color of state law, meaningfully interfered with Plaintiff's protected possessory interests in Axel by shooting and killing the dog without due process of law.

107.  Defendants' killing of Axel was effectuated in the absence of a lawfully issued warrant and/or without judicial authorization, thereby rendering their actions presumptively per se unreasonable.

108.      Axel, at no time on or about May 10, 2024, posed or presented any danger to Defendants nor anyone else.

109.      Rather than resorting to shooting and killing Axel when Ms. McLaughlin exited her home to bring in Axel, Defendants could have stood back and simply demanded that Ms. McLaughlin take control of her dog.

110.      "The Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary — i.e., when less intrusive, or less destructive, alternatives exist." *San Jose Charter of the Hell's Angels*, 402 F.3d at 975.

111.      Based on the facts and circumstances of this matter, Defendants are not entitled to qualified immunity. It is clearly well-established within this Circuit and others that "an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful." *Andrews,* 454 F.3d at 918; see also *Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009).

112.      A police officer's shooting of a privately owned animal that does not pose an immediate danger to the officer or others constitutes a clearly established Fourth-Amendment violation. *See Love,* 134 F.4th at 1116; *Ray v. Roane*, 948 F.3d 222, 229–30 (4th Cir. 2020); *Plowright v. Miami-Dade Cnty.*, 102 F.4th 1358, 1361 (11th Cir. 2024).

113.      Courts have found similar applications of force unreasonable in comparable facts. *See, e.g., Andrews*, 454 F.3d at 918; *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 208–09 (3d Cir. 2001); *Moore v. Town of Erie*, No. 12-cv-02497, 2013 U.S. Dist. LEXIS 101298 (D. Colo. July 19, 2013); *Russell v. City of Chicago*, 2011 WL 7178888 (N.D. Ill.).

114.    As a direct and proximate result of Defendants' conduct and action, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to infringements and deprivations of her constitutional rights; deprivation of her companion animal and property; fear for her liberty and security; mental anguish and distress; anxiety; and injury to her faith in society.

115.    The acts of Defendants, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff, entitling her to punitive damages against the individual Defendants.

## STATE CLAIMS

### SEVENTH CLAIM — Conversion and/or Trespass to Chattels

115.    All of the foregoing paragraphs are incorporated by reference.

116.    Plaintiff co-owned and had the right to immediate possession of Axel, a dog and Plaintiff's personal property.

117.    Defendants intentionally exercised dominion and control over that property by shooting and killing Axel — including a final "put-down" shot over 30 seconds after incapacitation — and by removing his body, thereby seriously interfering with Plaintiff's rights of possession. These acts constitute conversion.

118.    In the alternative, Defendants' conduct constituted trespass to chattels by intentionally dispossessing the Plaintiff of Axel and/or impairing his condition and value.

119.    As a direct and proximate result, Plaintiff suffered damages recoverable under Kansas law. Plaintiff seeks all compensatory damages against Defendants permitted by law.

120.     Under Kansas law, for injury or destruction of a pet dog, which is personal property, Kansas permits damages beyond bare market value where the animal has little or no discernible market value.

121.     Relevant factors that determine damages include, but are not limited to, the reasonable and customary cost of care and treatment, replacement cost, loss of use, and any special value to the owner.

122.     For a pet killed, recoverable damages include the animal's market value (if any) or actual value to the owner measured by the factors outlined herein, together with reasonably incurred related expenses.

## EIGHTH CLAIM –

### Outrage/Reckless Infliction of Emotional Distress

123.     All of the foregoing paragraphs are incorporated by reference.

124.     Defendants' unjustified, injuring and summary destruction of Plaintiff's dog constituted intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the Plaintiff extreme and severe mental distress.

## NINTH CLAIM — Negligence

125.     All of the foregoing paragraphs are incorporated by reference.

126.     Defendants breached their duty of care to prevent foreseeable harm — specifically, Defendants Donaldson and Lewis inflicted the injury, directly causing the destruction and death of Plaintiff's dog and causing Plaintiff significant monetary, physical, and emotional damage.

## TENTH CLAIM — Negligence Per Se

127.     All of the foregoing paragraphs are incorporated by reference.

128.    The City Code establishes standards for humane capture, impound/notice/holding, and authorized non-lethal control; Plaintiff is within the class those provisions protect; and the harm suffered is of the type that those provisions were designed to prevent.

129.    Defendants' violations of these provisions constitute negligence per se, proximately causing Plaintiff's damages.

130.    In the alternative, even if negligence per se is not applied, the cited ordinance provisions establish the applicable standard of care for ordinary negligence; Defendants' violations constitute breach of duty and are admissible as evidence of negligence. This alternative is pled in addition to, and consistent with, Plaintiff's existing negligence claim.

131.    Plaintiffs McLaughlin reserves the right to amend this Complaint to raise additional, alternative claims for relief as discovery commences.

Plaintiffs respectfully request entry of judgment, jointly and severally where permitted, awarding:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages on the §1983 and state-law claims where allowed by law;

C. Declaratory relief under 28 U.S.C. § 2201 that the policies/customs/training failures and the complained-of conduct violate the Fourth Amendment;

D. Equitable relief as warranted by Article III (including policy/training/reporting reforms, if supported by standing and proof);

E. Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)/28 U.S.C. § 1920;

F. Pre-judgment interest (including under K.S.A. 16-201 where applicable) and post-judgment interest under 28 U.S.C. § 1961; and

G. All other and further relief the Court deems just and proper.

Respectfully submitted by,

*Downing, Davey, Vokins & Mann, LLC*

/s/ Tai J. Vokins
Tai J. Vokins, #23707
Danielle N. Davey, #24205
831 Massachusetts, Suite B
Lawrence, KS 66044
Tel:  (785) 330-5577
Fax  (785) 258-6115
tvokins@ddvmlaw.com
ddavey@ddvmlaw.com

*Barnett Law Office, LLC*

/s/ Katie B. Barnett
Katie B. Barnett, #25134
P.O. Box 442193
Lawrence, KS 66044
Tel: (785) 727-9789
katie@barnettlawoffice.com

Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Tai J. Vokins
Tai J. Vokins, #23707
*Downing, Davey, Vokins & Mann, LLC*
831 Massachusetts, Suite B
Lawrence, KS 66044
Tel:  (785) 330-5577
Fax  (785) 258-6115
tvokins@ddvmlaw.com
Attorney for Plaintiff

Page 23 of 23